**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT BOSCH LLC, | ) |
| | ) Case No. 10 CV 1437 |
| Plaintiff, | ) |
| | ) Honorable Robert W. Gettleman |
| v. | ) |
| | ) Magistrate Judge Maria Valdez |
| OLD WORLD INDUSTRIES, INC., | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |
| | ) **REDACTED -- PUBLIC VERSION** |

**ROBERT BOSCH LLC'S OPENING BRIEF IN SUPPORT OF**
**ITS MOTION FOR PRELIMINARY INJUNCTION**

WILLIAM P. OBERHARDT, LLC

William P. Oberhardt
WILLIAM P. OBERHARDT, LLC
70 West Madison, Suite 2100
Chicago, IL 60602
Tel: 312-251-1100
Fax: 312-251-1175
Atty. Reg. No. 3122407

Of Counsel:

Michael J. Lennon
Mark A. Hannemann
Jeffrey S. Ginsberg
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel:  (212) 425-7200

*Attorneys for Plaintiff Robert Bosch LLC*

Dated:  July 14, 2010

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   LEGAL STANDARD FOR A PRELIMINARY INJUNCTION ....................................... 3

III.  BOSCH IS LIKELY TO SUCCEED ON ITS INFRINGEMENT CLAIMS .................... 3

      A. The Facts Plainly Establish Bosch's Likelihood of Success ....................................... 3

          1.  Bosch has successfully asserted the '905 patent in prior litigations ...................... 3

          2.  Old World's tenuous non-infringement positions and reliance on references
              previously vetted during prosecution and prior litigation are inadequate to
              overcome Bosch's strong showing of likelihood of success .................................. 4

      B. Detailed Analysis of Bosch's Likelihood of Success ................................................... 7

          1.  Infringement ........................................................................................................ 7

              a.    Old World infringes claims 13, 17 and 18 of the '905 patent .................... 8

          2.  Validity ............................................................................................................... 14

              a.    The '905 patent is valid ............................................................................. 15

              b.    The '520 patent is valid ............................................................................. 16

IV.   BOSCH HAS BEEN, AND WILL CONTINUE TO BE, IRREPARABLY
      HARMED BY OLD WORLD'S INFRINGEMENT, AND THE OTHER
      EQUITABLE FACTORS FAVOR GRANTING A PERMANENT INJUNCTION ....... 17

      A. The Underlying Equitable Facts Favor Granting A Preliminary Injunction .............. 17

          1.  The beam blade products at issue ....................................................................... 17

          2.  Bosch and Old World are direct competitors in the growing beam
              blade market ...................................................................................................... 18

      B. Bosch Will Suffer Irreparable Harm In The Absence Of A Preliminary
         Injunction, Which Is Not Compensable By Money Damages Alone ........................ 19

      C. The Balance of Hardships and the Public Interest Factors Decidedly
         Favor Bosch ............................................................................................................. 22

VI.   CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott Labs. v. Andrx Pharms., Inc.*,
   473 F.3d 1196 (Fed. Cir. 2007). ........................................................................... 3, 14

*Abbott Labs. v. Mead Johnson & Co.*,
   971 F.2d 6 (7th Cir. 1992) ..................................................................................... 21

*Abbott Labs. v. Sandoz, Inc.*,
   500 F. Supp. 2d 807 (N.D. Ill. 2007) ............................................................ 7, 15, 23

*Abbott Labs. v. Sandoz, Inc.*,
   544 F.3d 1341 (Fed. Cir. 2008) .............................................................................. 21

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) .............................................................................. 15

*Atlas Powder Co. v. Ireco Chems.*,
   773 F.2d 1230 (Fed. Cir. 1985) .............................................................................. 16

*Bio-Technology Gen. Corp. v. Genentech, Inc.*,
   80 F.3d 1553 (Fed. Cir. 1996) ................................................................................ 22

*Canon, Inc. v. GCC Int'l, Ltd.*,
   263 Fed. Appx. 57 (Fed. Cir. 2008) ....................................................................... 21

*Celeritas Techs. Ltd. v. Rockwell Int'l Corp.*,
   150 F.3d 1354 (Fed. Cir. 1998) .............................................................................. 14

*Chamberlain Group, Inc. v. Lear Corp.*,
   No. 05 C 3449, 2007 U.S. Dist. LEXIS 23883, (N.D. Ill. Mar. 30, 2007) .............. 20

*Datascope Corp. v. Kontron, Inc.*,
   786 F.2d 398 (Fed. Cir. 1986) .................................................................................. 5

*Garvey Corp. v. Barry-Wehmiller Design Group, Inc.*,
   365 F. Supp. 2d 893 (N.D. Ill. 2005) ...................................................................... 22

*Henkel Corp. v. Coral, Inc.*,
   754 F. Supp. 1280 (N.D. Ill. 1990) ......................................................................... 23

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990) ........................................................................... 7, 16

*Hybritech, Inc. v. Abbott Laboratories,*
  849 F.2d 1446 (Fed. Cir. 1988) .................................................................... 7, 15, 22

Int'l Rectifier Corp. v. IXYS Corp.,
  *361 F.3d 1363 (Fed. Cir. 2004)* .................................................................... 7

*Jones v. Hardy,*
  727 F.2d 1524 (Fed. Cir. 1984) ..................................................................... 14

*Kahn v. Gen. Motors Corp.,*
  135 F.3d 1472 (Fed. Cir. 1998) ..................................................................... 14

*Metabolite Labs., Inc. v. Lab. Corp. of Am.,*
  370 F.3d 1354 (Fed. Cir. 2004) ..................................................................... 7, 16

*Moen, Inc. v. Foremost Int'l Trading,*
  19 F. Supp. 2d 854 (N.D. Ill. 1998) ............................................................... 22

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.,*
  520 F.3d 1358 (Fed. Cir. 2008) ..................................................................... 16

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
  429 F.3d 1364 (Fed. Cir. 2005) ..................................................................... 20

*Polymer Techs., Inc. v. Bridwell,*
  103 F.3d 970 (Fed. Cir. 1996) ...................................................................... 20, 21

*Power-One, Inc. v. Artesyn Techs., Inc.,*
  599 F.3d 1343 (Fed. Cir. 2010) ..................................................................... 15

*Purdue Pharma L.P. v. Boehringer Ingelheim, GMBH,*
  237 F.3d 1359 (Fed. Cir. 2001) ..................................................................... 7

*Roper Corp. v. Litton Sys.,*
  757 F.2d 1266 (Fed. Cir. 1985) ..................................................................... 16

*Sanofi-Synthelabo v. Apotex, Inc.,*
  470 F.3d 1368 (Fed. Cir. 2006) ..................................................................... 20, 22

*Smith Int'l, Inc. v. Hughes Tool Co.,*
  718 F.2d 1573 (Fed. Cir. 1983) ..................................................................... 23

*Sud-Chemie, Inc. v. Multisorb Techs., Inc*
  554 F.3d 1001 (Fed. Cir. 2009) ..................................................................... 16

Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.,
  492 F.3d 1350 (Fed. Cir. 2007) ..................................................................... 6

*Techtronic Indus. Co. v. Chervon Holdings Ltd.*,
    395 F. Supp. 2d 720 (N.D. Ill. 2005) ................................................................. 21, 24

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
    446 F. Supp. 2d 664 (E.D. Tex. 2006) ...................................................................... 21

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
    No. 04 C 5312, 2008 U.S. Dist. LEXIS 86953, (N.D. Ill. May 22, 2008) .............................. 20

**Statutes**

35 U.S.C. § 102 ........................................................................................................ 14

35 U.S.C. § 282 ..................................................................................................... 6, 14

## I.    INTRODUCTION

Plaintiff Robert Bosch LLC ("Bosch") respectfully submits this brief in support of its motion for a preliminary injunction to prevent defendant Old World Industries, Inc. ("Old World") from irreparably harming Bosch by its continued infringement of United States Patent Nos. 6,944,905 ("the '905 patent") and 7,451,520 ("the '520 patent").[1]  Bosch requests that the Court enjoin Old World from making, using, offering for sale, selling, or importing into the United States its Duralast Flex Blade, ProLine and PEAK Optix beam blade products[2] ("Accused Products"), as well as any product that is not colorably different from the same, until final resolution of this case.  As discussed below, the relevant factors (Bosch's likelihood of success on the merits, irreparable harm to Bosch if relief is not granted, the balance of hardships, and the public's interest) all favor the grant of a preliminary injunction in this case.

There is strong a likelihood that Bosch will succeed on the merits of its infringement claims for both the '905 and '520 patents.  Old World only disputes three limitations of the asserted claims of the '905 patent.  However, a jury in a prior litigation[3] found each of these disputed limitations present in that defendant's product, which is substantially similar to Old World's Accused Products.  Old World only disputes one limitation of some claims of the '520 patent, and all of the claimed features in the asserted claims of the '520 patent are present in Old World's Accused Products.

---

[1]      Certified copies of the '905 and the '520 patents are attached as Exhibits 3 and 4, respectively, to the Declaration of William P. Oberhardt, Ex. A  to Plaintiff Robert Bosch LLC's Appendix of Exhibits In Support of Its Motion for a Preliminary Injunction and Opposition to Old World's Motion to Stay Proceedings (Appendix Ex. [#]), submitted concurrently herewith.

[2]      An overview of the technology involved in this case is provided in the Declaration of Dr. Steven Dubowsky, Appendix Ex. C at ¶¶ 3-6.

[3]      *Robert Bosch, LLC v. Pylon Mfg. Corp.*, C.A. No. 08-cv-00542-SLR (D. Del.) ("the *Pylon* case" or "*Bosch v. Pylon*").

As to patent validity, the '905 patent has already withstood a previous validity challenge in the *Pylon* case, and in view of an industry acquiescence in the same, Bosch is likely to prevail on Old World's challenge to the validity of that patent. Although it was not previously litigated, the '520 patent also is presumed valid. Significantly, all but five of the 88 references Old World produced in this case were either previously vetted in the *Pylon* case, or were examined by the United States Patent Office (USPTO) during prosecution of the asserted Bosch patents. None of the references produced by Old World affects the validity of either the '905 or '520 patents (Dubowsky Decl. ¶¶ 22-23).[4]

The equitable factors also favor granting a preliminary injunction. Bosch and Old World are direct competitors in the beam wiper blade market. As a result of Old World's infringement,—especially that which commenced *after* Bosch filed its complaint in this action— Bosch has been irreparably harmed by its loss of market share, customers, and business opportunities, including the loss of opportunities to enhance Bosch's reputation, goodwill, and brand loyalty in this growing market. Furthermore, Old World's low prices—enabled by Bosch's patented technology—have ██████████████████████████████████████ and caused irreversible price erosion. The irreparable harm suffered by Bosch is not quantifiable and monetary damages alone will not be sufficient to compensate Bosch for Old World's continued infringement. In addition, and consistent with the strong public policy favoring the enforcement of patent rights, monetary damages will also be inadequate to compensate Bosch for its statutory right to exclude its competitor from using its patented technology.

In contrast, any purported harm suffered by Old World is of its own making. Old World chose to expand its sales of its Accused Products even after Bosch brought the current lawsuit.

---

[4] "Dubowsky Decl. ¶ [#]" refers to the Declaration of Dr. Steven Dubowsky, Appendix Ex. C.

Old World cannot now be heard to complain that it will suffer any purported hardship because of a preliminary injunction directed to stop its continued and expanding infringing sales.

## II.     LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

The four factors relevant to a district court's decision to grant a preliminary injunction are: (1) likelihood of success on the merits; (2) irreparable harm if relief is not granted; (3) balance of hardships; and (4) public interest. *Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1200–01 (Fed. Cir. 2007).

## III.    BOSCH IS LIKELY TO SUCCEED ON ITS INFRINGEMENT CLAIMS

To establish likelihood of success on the merits, Bosch must show that it will likely prove that Old World infringes at least one valid and enforceable patent claim of either the '905 patent or the '520 patent. *See Andrx*, 473 F.3d at 1201. As discussed below, Bosch's patents are valid and enforceable, and Bosch can show a strong likelihood that Old World's Accused Products infringe the asserted claims of the '905 and the '520 patents.

### A.     The Facts Plainly Establish Bosch's Likelihood of Success

#### 1.     Bosch has successfully asserted the '905 patent in prior litigations

On October 26, 2007, Bosch filed a lawsuit against Jamak Fabrication-Tex Ltd. asserting infringement of, among others, the '905 patent.[5] (*Bosch v. Jamak*, D.I. 1.) The parties thereafter reached a settlement agreement whereby Jamak agreed to stop selling its accused wiper blades (Kashnowski Decl. ¶ 25)[6] and a joint stipulation of dismissal was entered on May 20, 2008 (*Bosch v. Jamak,* D.I. 7).

---

[5]     *Robert Bosch LLC v. Jamak Fabrication-Tex Ltd*, No. 1:07-cv-00676 (D. Del.) ("the *Jamak* case" or "*Bosch v. Jamak*").

[6]     "Kashnowski Decl. ¶ [#]" refers to the Declaration of Martin Kashnowski, Appendix Ex. B.

Three months later, on August 25, 2008, Bosch filed a complaint against another infringing competitor—Pylon Manufacturing Corporation—again asserting infringement of the '905 patent, among others. (*Bosch v. Pylon,* D.I. 1.)  A jury trial was held in that case and verdict rendered on April 23, 2010.  The jury found claim 13 of the '905 patent (the only asserted claim of that patent) infringed and valid.  (Oberhardt Decl., Ex. A-1 at 4–5.)[7]

> **2.** **Old World's tenuous non-infringement positions and reliance on references previously vetted during prosecution and prior litigation are inadequate to overcome Bosch's strong showing of likelihood of success**

On March 3, 2010, before trial in the *Pylon* case, Bosch filed its complaint in the present action, asserting infringement of the '905 and '520 patents, among others.  (D.I. 1.)  Specific to this motion, Bosch alleges infringement of claims 13, 17 and 18 of the '905 patent, and claims 1–12, 14 and 15 of the '520 patent.  (*Id.*)  The '520 patent, issued on November 18, 2008, was not at issue in the previous litigations.  Old World filed its Answer on April 22, 2010, and filed counterclaims asserting that the patents-in-suit are not infringed and are invalid.  (D.I. 8.)

On June 10, 2010, Bosch provided Old World with its initial infringement contentions pursuant to Local Patent Rule ("LPR") 2.2, including the infringement charts attached as Exhibits 1 and 2 to the Declaration of Dr. Steven Dubowsky.  On June 24, 2010, after Bosch informed Old World of its intent to file the present motion, Old World served Bosch its initial non-infringement contentions pursuant to LPR 2.3(a) (Oberhardt Decl., Ex. A-2).  Old World only identified three claim limitations of the '905 patent—common to claims 13, 17 and 18—that it contends its Accused Products do not have:

- "an attack surface (54) oriented toward the main flow of the relative wind;"

---

[7]     "Oberhardt Decl., Ex. A-[#]" refers to the exhibits attached to the Declaration of William P. Oberhardt, Appendix Ex. A.

- "two diverging legs (44, 46) viewed in transverse cross section, wherein the two diverging legs are connected to each other at a common base (48);"

- "the attack surface (54) is embodied on the outside of the one leg (44)"

(Oberhardt Decl., Ex. A-2 at 8–10, 11–12 & 13–15.)  However, as discussed below, Old World's non-infringement positions are contrary to the '905 patent's description of these features.

Furthermore, a jury in the *Pylon* case has already found each of these disputed limitations present in Pylon's Generation 3 product (Oberhardt Decl., Ex. A-1 at 4–5), which is substantially similar to Old World's Accused Products (Dubowsky Decl. ¶ 13).  As demonstrated below, the similarities between Old World's Accused Products and the Pylon product further demonstrate Bosch's likelihood of success on the merits.  *See, e.g., Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 400 (Fed. Cir. 1986) ("One way for a movant to make that clear showing is by relying on a prior adjudication.").

 

**Pylon Generation 3 Product**        **Old World Accused Products**

Likewise, Old World only identified a few claim limitations of the 14 asserted claims of the '520 patent that it contends its Accused Products do not have.  (Oberhardt Decl., Ex. A-2 at 16, 18, 19–20, 21 & 22.)  Specifically, Old World only disputes that the Accused Products lack

one claim limitation for independent claims 1 and 15—*i.e.*, the requirement that the wiper strip and the wind deflection strip are "directly and securely connected together at their sides facing one another."(Oberhardt Decl., Ex. A-2 at 16–17 & 21–23.)  However, as shown in the above figure and discussed in greater detail below, the wiper strip and the wind deflection strip have mating profile shapes resulting in a direct and secure connection at their sides facing each other. (Dubowsky Decl. ¶ 16.)

Indeed, every claimed feature of the asserted claims of the '905 and '520 patents is found in Old World's Accused Products.  (Dubowsky Decl. ¶¶ 12, 21.)

Furthermore, Bosch is likely to prevail on Old World's validity challenges to the '905 and '520 patents.  Old World has not provided any non-infringement or unenforceability contentions pursuant to LPR 2.3(b), (c).  However, pursuant to LPR 2.1(b)(2), Old World provided Bosch a copy of each item of prior art that Old World contends allegedly anticipates or renders obvious the asserted patents in this case.  These references fail to establish a likelihood that Old World will ultimately prevail in proving the patents invalid by the required clear and convincing evidence. *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007) ("Because a patent is presumed to be valid, 35 U.S.C. § 282, the evidentiary burden to show facts supporting a conclusion of invalidity, which rests on the accused infringer, is one of clear and convincing evidence.").  None of the references produced by Old World impacts the validity of either the '905 or '520 patents.  (Dubowsky Decl. ¶¶ 22, 23.)

Moreover, all but five of the 88 references Old World provided as part of its LPR 2.1(b)(2) document production were either previously vetted in the *Pylon* case—in which validity of the '905 patent was upheld—or were examined by the United States Patent and Trademark Office (USPTO) during prosecution of one of the asserted patents.   A chart

identifying each reference produced by Old World, and its correlation to either the *Pylon* case or prosecution of the asserted patents, is provided as Exhibit 3 to the Declaration of Dr. Steven Dubowsky. The Court may give "considerable weight" to the fact that the '905 patent has already withstood a previous validity challenge in the *Pylon* case based on a substantial number of references produced by Old World. *See, e.g., Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1452 (Fed. Cir. 1988); *Abbott Labs. v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 817 (N.D. Ill. 2007). Likewise, Old World will have an "especially difficult" burden of proving invalidity by relying on references that were previously considered by the USPTO examiner during prosecution of the '905 and '520 patents. *See Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990); *Metabolite Labs., Inc. v. Lab. Corp. of Am.*, 370 F.3d 1354, 1368 (Fed. Cir. 2004) ("Where, as here, the PTO previously considered the prior art reference, [defendant] bears an even heavier burden to prove invalidity."). Accordingly, Bosch is likely to prevail on any Old World challenge to the validity of these patents.

###### B. Detailed Analysis of Bosch's Likelihood of Success

###### 1. Infringement

Determining infringement is a two step inquiry. The court first construes the claims as a matter of law, and then compares the properly-construed claims to the accused device. *Purdue Pharma L.P. v. Boehringer Ingelheim, GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001). To infringe, every limitation of the asserted claims must be present in the accused device, either literally or by an equivalent. *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004) ("Comparison of the claims to the accused device requires a factual determination that every claim limitation or its equivalent is found in the accused device."). In this case, there is no legitimate dispute that Old World's making, using, offering for sale, selling, and/or importing into the United States its Accused Products literally infringes the asserted claims of Bosch's '905

and '520 patents. (Dubowsky Decl. ¶¶ 8, 10-12, 15-21.) Charts identifying where each element of each of claims 13, 17 and 18 of the '905 patent and claims 1–12, 14 and 15 of the '520 patent is found within Old World's Accused Products is provided as Exhibits 1 and 2 (Ex. C-1 and C-2, respectively) attached to the declaration of Dr. Steven Dubowsky.

### a. Old World infringes claims 13, 17 and 18 of the '905 patent

Old World's Accused products infringe each of claims 13, 17 and 18 of the '905 patent. (Dubowsky Decl. ¶¶ 10-12; Ex. C-1.) As set forth above, Old World only disputes three limitations of the asserted claims. Each of these claim elements, however, is found in Old World's Accused Products. (Dubowsky Decl. ¶¶ 10-11.)

Old World argues that "Bosch's contentions fail to show any purported 'attack surface' on Old World's Accused Products that is oriented toward any purported 'main flow of the relative wind,' as those terms are properly interpreted." (Oberhardt Decl., Ex. A-2 at 8–9, 11 & 13–14.) This is incorrect. The '905 patent describes the meaning of these terms:

> [T]he wiper blade is provided with a so-called wind-deflection strip so that the airflow-induced tendency of the wiper blade to lift up from the window that occurs at high driving speeds is counteracted by a force component directed toward the window. To this end, the wind-deflection strip has a front side, which is embodied as an attach [sic] surface and is acted on chiefly by the relative wind during the reciprocating wiper operation.
>
>         *      *      *
>
> An attack surface 54, which is fluted in the exemplary embodiment, is embodied on the outside of the one leg 44 and the relative wind chiefly flows against this attack surface 54 during operation of the wiper device.

(The '905 patent at 1:27–34; 4:48–51.)

The "relative wind" is the wind induced at driving speeds that acts upon the wiper blade, and the "attack surface" is the surface on front side of the wind deflection strip that generates a

down-force when the relative wind flows against it. Old World's Accused Products have this claimed feature, highlighted below:



(Ex. C-1 at 3, 10 & 16; Dubowsky Decl. ¶ 10.) Furthermore, Old World directs the end user to install the Accused Products such that the above-highlighted surface is forward-facing. (Oberhardt Decl., Ex. A-5.)

Old World next argues that the "arbitrary structure Bosch has identified in yellow and blue in Old World's Accused Products are not diverging legs as required by the claims. Nor is the circled structure (48), which includes the structure colored in yellow and blue which Bosch contends are diverging legs, a common base which connects any purported two diverging legs." (Oberhardt Decl., Ex. A-2 at 9, 11–12 & 14.) Old World's position lacks merit. The '905 patent describes, with reference to Figures 2 and 3, that:

> Viewed in cross section, the wind deflection strip 42 has two diverging legs 44 and 46, which are connected to each other by a common base 48. The free ends 50 and 52 of the legs 44 and 46 are oriented toward the window 22 and are supported against the wiper blade 10 or its support element 12.

(The '905 patent at 4:43–48; *see also id.* at 6:37–43.) Old World's Accused Products have two diverging legs (highlighted blue and yellow below) that are connected to each other at a common

base (48, circled below). (Ex. C-1 at 3, 10 & 16; Dubowsky Decl. ¶ 11.) Compare Old World's

Accused Products to Figure 3 of the '905 patent:



**Old World's Accused Products**          **Figure 3, '905 patent**

Old World further argues that its "Accused Products that Bosch identifies in its

contentions fails to show that 'the attack surface (54) is embodied on the outside of the one leg

(44)', given that claim 13 also requires that the one leg (44) must diverge from leg (46) and must

be connected to leg (46) at a common base (48) as provided above." (Oberhardt Decl., Ex. A-2

at 9–10, 12 & 14–15.) As shown below, the attack surface highlighted red is embodied on the

outside of the leg highlighted yellow:



(Ex. C-1 at 4, 11 & 17; Dubowsky Decl. ¶ 11.)  Thus, Old World's Accused Products also have this feature.

Old World's Accused Products have each of the remaining limitations of claims 13, 17 and 18 that Old World did not dispute in its non-infringement contentions.  (Dubowsky Decl. ¶ 9; Ex. C-1.)

        **b.**      **Old World infringes claims 1–12, 14 and 15 of the '520 patent.**

Old World's Accused Products have each of the features of claims 1–12, 14 and 15 of the '520 patent.  (Dubowsky Decl. ¶¶ 15, 21; Ex. C-2.) With respect to independent claims 1, 10 and 15, Old World contends that "Bosch fails to identify any structure in Old World's Accused Products that allegedly is 'directly and securely connected together at their sides facing one another.'"  (Oberhardt Decl., Ex. A-2 at 16, 20 & 22.)  This is incorrect.  The '520 patent provides, in relevant part, that:

> As the pre-assembled position of the wind deflection strip 24 shown in FIG. 2 shows, it has a notched recess 46 on its first triangular side 40, the cross sectional profile of which is matched with the cross sectional profile of the belt-shaped broadening 37 of the continuation 36. In this way, the belt-shaped broadening 37 forms a positive profile shape with which a corresponding negative profile shape 46 of the wind deflection strip 24 fits snugly. The wind deflection strip 24 can thus be placed snugly onto the continuation 36, 37 of the wiper strip 14. This results in a secure fix between the wiper strip 14 provided with the support element 12 and the wind deflection strip 24 as seen in the longitudinal direction of the wiper blade 10.

(The '520 patent at 6:7–19.)

Furthermore, the prosecution history of the '520 patent makes clear that the "directly and securely" limitation was added by amendment to define that the wiper strip and wind deflection strip are directly secured to each other, as opposed to indirectly connected to each other by

means of the support element alone. (*See* Oberhardt Decl., Ex. A-6 at BOS_LLC0002638, BOS_LLC0002675.)

Old World's Accused Products are characterized in that the two components (*i.e.,* the wiper strip and the wind deflection strip) are directly and securely connected together at their sides facing one another. (Dubowsky Decl. ¶ 16; Ex. C-2 at 4, 19 & 28.) For example, the wiper strip is provided with a positive profile shape which is matched with a corresponding negative profile shape of the wind deflection strip, located at the sides of each facing one another. The negative profile shape of the wind deflection strip directly fits onto the positive profile shape of the wiper strip, resulting in a direct and secure connection between the same.



(Ex. C-2 at 4; *see also id.* at 19 & 28.) Old World's Accused Products have a wiper strip and wind deflection strip "directly and securely connected together at their sides facing one another." (Dubowsky Decl. ¶ 16; Ex. C-2 at 4, 19 & 28.)

With respect to claim 10, Old World further argues that its Accused Products do not have "a wind deflection strip that is located above the top surface of the support element," as that term is properly interpreted. (Oberhardt Decl., Ex. A-2 at 19-20.) The prosecution history of the '520 patent makes clear that "a wind deflection strip that is located above the top surface of the

- 12 -

support element" does not exclude a wind deflection strip located both above and around the support element. (*See* Oberhardt Decl., Ex. A-6 at BOS_LLC0002639, BOS_LLC0002668 (amending different limitation of application claim 30 which issued as claim 10).) There is no legitimate dispute that the wind deflection strip of Old World's Accused Products is located above the support element. (Dubowsky Decl. ¶ 16.)



Therefore, there is a strong likelihood that Bosch will prove infringement of independent claims 1, 10 and 15. (Dubowsky Decl. ¶¶ 16, 20; Ex. C-2 at 1–5, 16–20 & 24–29.) Old World does not dispute that its Accused Products have the features of dependent claims 2, 3, 6–9, 11 and 14. (Oberhardt Decl., Ex. A-2 at 17–19 & 20–21.) Accordingly, Bosch will likely succeed in proving infringement of these claims.

Old World's Accused Products also have the features of dependent claims 4, 5 and 12. With respect to dependent claim 4, the stem-like continuation is located at a wall of the wiper strip facing the flexible rails and broadens into a belt shape after penetrating the longitudinal slot of the support element. (Dubowsky Decl. ¶ 17; Ex. C-2 at 8–9.) This creates longitudinal holding notches for the flexible rails of the support element such that the continuation covers the inner strip edges of the flexible rails that face one another. (*Id.*; Ex. C-2 at 9–10.) Thus, each element of claim 4 of the '520 patent is further present in Old World's Accused Products. (*Id.* at ¶¶ 17, 20.)

The features of claim 5 are also present in Old World's Accused Products. The belt-like broadening of the continuation creates a positive profile shape that snugly fits a negative profile shape designed as a notched recess in the wind deflection strip. (Dubowsky Decl. ¶ 18; Ex. C-2 at 11.)

With respect to dependent claim 12, the wind deflection strip in each of the Accused Products is generally triangular in cross section and the recess is in a lower surface thereof. (Dubowsky Decl. ¶ 19; Ex. C-2 at 22.) Thus, the additional elements of dependent claims 4, 5 and 12 of the '520 patent are present in Old World's Accused Products. (Dubowsky Decl. ¶¶ 17-20.)

Old World should not be permitted to use its infringing products to compete with Bosch in the beam blade market in a manner which has, and will continue to, irreparably harm Bosch.

### 2. Validity

The '905 and '520 patents are presumed valid. 35 U.S.C. § 282. To defeat Bosch's motion based on an invalidity or unenforceability defense, Old World, "the party bearing the burden of proof on the issue at trial, must establish a substantial question of invalidity or unenforceability, i.e., that it is likely to succeed in proving invalidity or unenforceability of the asserted patents." *Andrx*, 473 F.3d at 1201. At trial, Old World must show by clear and convincing evidence that the prior art contains a teaching of all limitations of the claimed invention. *Celeritas Techs. Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998) (a determination that a patent is invalid as being anticipated under 35 U.S.C. § 102 requires a finding that "each and every limitation is found either expressly or inherently in a single prior art reference"); *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1479-80 (Fed. Cir. 1998) ("In determining obviousness, the invention must be considered as a whole and the claims must be considered in their entirety."); *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984) (facts

supporting invalidity must be shown by clear and convincing evidence). Furthermore, a combination of known elements cannot render a patent obvious in the absence of evidence providing a motivation to combine the references. *See, e.g., Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1351–52 (Fed. Cir. 2010) ("a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements is independently, known in the prior art").

### a. The '905 patent is valid

"It is well-established that in context of a motion for preliminary injunction against further infringement of a patent, the patent holder may use a prior adjudication of patent validity involving a different defendant as evidence supporting its burden of proving likelihood of success on the merits." *Hybritech*, 849 F.2d at 1452. "[T]he district court as an exercise of its discretion, may give considerable weight to a prior adjudication of validity in determining the likelihood of success on the merits on the issue of validity in the preliminary injunction proceeding before it." *Id.*; *see Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001) (a patentee may support its burden of proving likelihood of success on the merits "by showing that the patent in suit had successfully withstood previous validity challenges in other proceedings"); *Sandoz*, 500 F. Supp. 2d at 817 ("A patentee can make such a case by showing, for example, that the patent in suit has withstood previous validity challenges in other proceedings....") This is the case here.

Old World relies mostly on the same prior art that was previously vetted through Pylon's invalidity contentions and its expert report, testified to by the experts at trial, and rejected by the jury in upholding validity of the '905 patent. (Dubowsky Decl. ¶ 22; Ex.C-3.) Accordingly, Bosch is likely to prevail over a validity challenge based on these references. *See, e.g., Hybritech*, 849 F.2d at 1452; *Sandoz*, 500 F. Supp. 2d at 817. Furthermore, none of the few

additional references produced by Old World impact the validity of the '905 patent. (Dubowsky Decl. ¶ 22.) Therefore, Bosch will likely prevail on Old World's challenge to the validity of the '905 patent.

Furthermore, Bosch's beam blades embody the invention of the '905 patent. (Dubowsky Decl. ¶ 14.) They have achieved significant commercial success and received numerous industry awards. (Kashnowski Decl. ¶¶ 10, 11.) Such evidence of objective indicia of non-obviousness weighs in favor of Bosch's likelihood of success on the merits. *See, e.g., Sud-Chemie*, *Inc. v. Multisorb Techs., Inc* 554 F.3d 1001, 1009 (Fed. Cir. 2009); *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008).

### b. The '520 patent is valid

Though the validity of the '520 patent has not yet been litigated, prior adjudication of validity is not a prerequisite to establishing the likelihood of success on the merits. *See Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985) (while prior adjudication may support patentee's burden of proving a likelihood of success on the merits, "final adjudication" is not a prerequisite); *Roper Corp. v. Litton Sys.*, 757 F.2d 1266, 1270 (Fed. Cir. 1985) (an unchallenged patent is presumed valid).

None of the references produced by Old World affect the validity of the '520 patent. (Dubowsky Decl. ¶ 23.) Moreover, Old World produced nine references that were before the USPTO during prosecution of the '520 patent. If Old World relies on any of these references to support its invalidity claims, it will have to meet the "especially difficult" burden of proving invalidity based on the same. *Hewlett-Packard,* 909 F.2d at 1467 ("This burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application."); *see also Metabolite,* 370 F.3d at 1368. Therefore, Bosch is likely to prevail on any challenge by Old World to the validity of the '520 patent.

Because Bosch has shown that it is likely to prevail on its infringement claims, and the '905 and '520 patents are likely to be found valid, the first factor (likelihood of success) favors granting a preliminary injunction against Old World.

## IV. BOSCH HAS BEEN, AND WILL CONTINUE TO BE, IRREPARABLY HARMED BY OLD WORLD'S INFRINGEMENT, AND THE OTHER EQUITABLE FACTORS FAVOR GRANTING A PERMANENT INJUNCTION

### A. The Underlying Equitable Facts Favor Granting A Preliminary Injunction

#### 1. The beam blade products at issue

Bosch's business is focused primarily on automotive products and systems, including wiper blades that Bosch sells to original equipment manufacturers and in the aftermarket. (Kashnowski Decl. ¶ 3.) Quality and innovation are the cornerstones of the Bosch brand. (*Id.* at ¶ 7.) Bosch has invested heavily in the research, development and testing of its wiper blade products. (*Id.* at ¶¶ 7, 9.)

In 2002, Bosch introduced to the aftermarket the first commercial beam blade with a spoiler (wind deflection strip), marketed under the Aerotwin brand. (*Id.* at ¶ 8.) Thereafter, at considerable time and expense, Bosch introduced the ICON beam blade. (*Id.* at ¶9.) Since entering the North American aftermarket with the ICON product in 2005, Bosch has sold its beam blades in a variety of retail stores, including Pep Boys, AutoZone, Advanced Auto Parts, NAPA and Firestone. (*Id.* at ¶¶ 4, 9.) Wiper blades are part of Bosch's core business in the automotive industry: ████████████████████████████████████████
████████████████████████████████████████████ (*Id.* at ¶ 6.)

Bosch's beam blades have enjoyed significant market success and received numerous industry awards. (*Id.* at ¶¶ 10, 11.) Sales of Bosch's ICON beam blades were ███████
████████████████████████████████████████ (*Id.* at ¶ 11.) This success, however, was undercut when Old World, and others, started introducing

- 17 -

"knock-off" beam blades at significantly lower prices. (*Id.* at ¶ 12.) The infringing use of

Bosch's patented beam blade technology has 

(*Id.* at ¶ 23.)

In response to the infringing sales by Old World and others,

(*Id.* at ¶ 13.) Bosch also

(*Id.*)

Bosch's ICON and Evolution wiper blades practice the '905 patent. (Dubowsky Decl. ¶ 14.)

Old World sells both conventional and beam wiper blades. (Oberhardt Decl., Ex. A-7.)

Old World's Accused Products are manufactured in China and imported into the U.S. for

distribution. (Kashnowski Decl. ¶ 16.) At the time Bosch filed its complaint, Old World was

selling the ProLine and PEAK Optix Accused Products. (Kashnowski Decl. ¶¶ 17, 18.) Since

then, Old World launched another Accused Product—the AutoZone Duralast Flex Blade. (*Id.* at

¶ 20.)

### 2. Bosch and Old World are direct competitors in the growing beam blade market

Beam blades are relatively new to the market, and the market for beam blades is a

growing one. (Kashnowski Decl. ¶ 14.) Bosch and Old World are direct competitors in the

automotive aftermarket, and currently compete for business at AutoZone, Pep Boys, and other

aftermarket retailers. (*Id.* at ¶¶ 5, 19-22.)

Bosch first became aware of Old World's PEAK Optix beam blade in 2008 when Bosch

and Old World

(*Id.* at ¶ 17.) BJ's Wholesale ultimately accepted Old World's proposal,

based on its lower price point. (*Id.*) Bosch lost its Pep Boys account in the second quarter of

2009, where it was selling the ICON product since 2006. (*Id.* at ¶ 18.) Bosch learned later that

year that Old World had began supplying beam blades to Pep Boys under Pep Boys' ProLine

private label. (*Id.*) ███████████████████████████████████████

███████████████████████████████████████████

(*Id.* at ¶ 19.)

Bosch has been selling its ICON beam blade at AutoZone—one of Bosch's largest beam

blade customers—since October 2005. (*Id.* at ¶ 20.) After Bosch filed its complaint on March 3,

2010, AutoZone began selling a new Duralast beam blade (the private label) supplied by Old

World. (*Id.*) The Duralast beam blade sales at AutoZone have been growing fast,█████████

████████████████████████ (*Id.* at ¶ 21.) Old World has competed

with Bosch in numerous other retail accounts, including Advanced Auto Parts, NAPA and

Firestone, where Bosch sells its ICON and Evolution wiper blades. (*Id.* at ¶ 22.)

The beam blade market is very price sensitive, and Old World competes aggressively on

price. (*Id.* at ¶ 15.) Old World's competitive pricing tactics have caused irreversible price

erosion in the market for the patented technology. (*Id.* at ¶ 23.) █████████████

███████████████████████████████████████████

██████████████████ (*Id.* at ¶ 13.) Moreover███████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ (*Id.* at ¶ 23.)

**B.      Bosch Will Suffer Irreparable Harm In The Absence Of A Preliminary
          Injunction, Which Is Not Compensable By Money Damages Alone**

Since filing its initial lawsuit against Jamak in 2007, Bosch has engaged in a systematic

approach to enforcing its patents directed to beam blade technology. *See supra* Part IV. A. This

case is Bosch's latest effort to enforce those rights. *See Pfizer, Inc. v. Teva Pharms. USA, Inc.,*

429 F.3d 1364, 1381 (Fed. Cir. 2005) ("[T]he fact that other infringers may be in the marketplace does not negate irreparable harm. A patentee does not have to sue all infringers at once. Picking off one infringer at a time is not inconsistent with being irreparably harmed."). Bosch and Old World are direct competitors in the beam blade market, and Bosch will continue to suffer irreparable harm unless Old World is enjoined from selling its infringing products. *See, e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2008 U.S. Dist. LEXIS 86953, at *XX (N.D. Ill. May 22, 2008) ("Therefore, the continuing existence of eSpeed's infringing products in the same marketplace as TT's products poses a risk of irreparable harm to TT.").

Old World has not only used Bosch's patented technology to compete for many of the same customers, but also has aggressively competed on price, driving down the market price for the technology it did not invest in developing. (Kashnowski Decl. ¶¶ 4, 5, 12, 13, 15, 17–23.) These actions have irreparably harmed Bosch and such harm is not compensable by money damages. *See Chamberlain Group, Inc. v. Lear Corp.*, No. 05 C 3449, 2007 U.S. Dist. LEXIS 23883, at *20 (N.D. Ill. Mar. 30, 2007) (Defendant's "actions have strained and will continue to strain [plaintiff's] relationship with its customers, and [plaintiff] has already had to offer a lower price to its largest customer, General Motors. Such injury is real and weighs against defendant's assertion that plaintiffs have failed to articulate any actual harm. The interest in maintaining customer relationships and exclusive distributorship weighs in favor of a finding of irreparable harm."), *vacated and remanded on other grounds*, 516 F.3d 1331 (Fed. Cir. 2008); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1381 (Fed. Cir. 2006) (affirming preliminary injunction where irreparable was found based in part on irreversible price erosion and loss of good will); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (vacating district court's denial of preliminary injunction in part because "Competitors change the

marketplace… Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.").

As a result of Old World's sales of infringing wiper blades, Bosch has lost market share "at a critical time in the market's development" and lost customers. *Cf. TiVo, Inc. v. EchoStar Commc'ns Corp*., 446 F. Supp. 2d 664, 669-70 (E.D. Tex. 2006) (granting permanent injunction against a competitor in a developing market). This is evidence of irreparable harm done by Old World, regardless of existence of other infringers in the market. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) (the presence of other infringers in the market does "not negate the market share and revenue loss upon [defendant's] entry while the litigation proceeds.").

It is impossible to determine exactly the market share Bosch would have possessed absent Old World's infringement, and, therefore, money damages cannot adequately compensate Bosch for this harm. *See Polymer,* 103 F.3d at 975–76 (loss of market opportunities cannot be quantified or adequately compensated, and is evidence of irreparable harm); *Canon, Inc. v. GCC Int'l, Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. 2008) (unpublished) ("Due to the difficulty (if not impossibility) of determining the damages resulting from price erosion and loss of market share, an award of money damages would not be sufficient"). Bosch's loss of business in a core area, and resulting loss of opportunity to enhance its goodwill and brand loyalty further supports a finding of irreparable harm and insufficiency of money damages to compensate for it. *See, e.g*., *Techtronic Indus. Co. v. Chervon Holdings Ltd.*, 395 F. Supp. 2d 720, 737 (N.D. Ill. 2005) ("damage to reputation and loss of good will are intangible harms for which it is virtually impossible to ascertain the precise economic consequences" (*quoting Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992))); *Garvey Corp. v. Barry-Wehmiller Design*

*Group, Inc.*, 365 F. Supp. 2d 893, 900 n.8 (N.D. Ill. 2005) ("Garvey would be irreparably harmed because continued infringement would injure its market share, the good will of its customers, and its reputation for innovation.").

Monetary damages will also not be adequate to compensate Bosch for its statutory right to exclude its competitor from using its patented technology. *See, e.g., Hybritech*, 849 F.2d at 1456–57 ("It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole.").

**C.      The Balance of Hardships and the Public Interest Factors Favors Bosch**

If Old World is allowed to continue selling its infringing products, the hardships that Bosch will suffer will be significant. As a result of Old World's infringement, Bosch█████████ ████████████████████████████████████████ (Kashnowski Decl. ¶ 13, 17–21, 23.)   Unless Old World is enjoined, ██████████████████████████ ████████████   *See Sanofi-Synthelabo*, 470 F.3d at 1381 (affirming preliminary injunction when finding irreparable harm was based in part on irreversible price erosion and loss of good will). Further, Bosch may not be able to recoup its significant investment in researching and developing the patented technology. (Kashnowski Decl. ¶ 23.) *See Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (affirming grant of preliminary injunction in part because irreparable harm done by the infringer will require patentee "to reduce its research and development activities"). Moreover, without an injunction, Bosch will be forced to compete with its own patented technology utilized by Old World, and will be deprived of its right to exclude a direct competitor. *See, e.g., Moen, Inc. v. Foremost Int'l Trading*, 19 F. Supp. 2d 854, 857 (N.D. Ill. 1998) (balancing hardships and finding that where the market is "highly

competitive," patentee "has a right to the exclusivity provided by the patent laws and to the market for the patented product it has developed via considerable expense and effort").

While Bosch has suffered at the hands of Old World's infringement of Bosch's patents, any harm to Old World is purely of its own making, stemming from sales of infringing products at risk—especially the Duralast Flex blade, introduced to the market *after* Bosch filed its complaint in this action. *See supra* section IV.A.2. Having reaped substantial benefits of infringement and further increasing its sales of Accused Products and market share *after* Bosch filed its complaint, Old World cannot be heard to complain that it will suffer any hardship from an injunction. *See Sandoz*, 500 F. Supp. 2d at 845 (in granting preliminary injunction - "It barely requires noting that [alleged infringer] chose to come to market with its product after this case was filed with full notice of [patentee's] claims."). An infringer's self-inflicted hardship from the calculated risk taken in selling an infringing product deserves no weight in the balance of hardships. *See Henkel Corp. v. Coral, Inc.*, 754 F. Supp. 1280, 1323 (N.D. Ill. 1990) (finding that hardship to patentee "outweighs any alleged hardship and injury to" defendant because an infringer "cannot be heard to complain if an injunction against continuing infringement destroys the business so elected" – granting preliminary injunction); *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) (rejecting defendant's argument that "it would be unfair to disrupt its activities with an injunction" because the defendant "took a calculated risk that it might infringe [the plaintiff's] patents").

Moreover, as the Federal Circuit has stated, "an alleged infringer's loss of market share and customer relationships, without more, does not rise to the level necessary to overcome the loss of exclusivity experienced by a patent owner due to infringing conduct." *Pfizer,* 429 F.3d at 1382. Because Old World's potential hardship does not outweigh the hardships Bosch will face,

and since Bosch should be able to enjoy the right to exclude infringers from the market, the balance of hardships favors the grant of a preliminary injunction.

Indeed, "In the typical patent case, there is a public interest in enforcing the protections secured by valid patents." *Techtronic,* 395 F. Supp. 2d at 737. Bosch invested substantial sums to develop its patented technology (Kashnowski Decl. ¶¶ 7, 9, 23) and this Court should protect Bosch's right to exclude Old World from practicing Bosch's inventions in the market Bosch developed. There is no "critical public interest that would be injured by the grant of preliminary relief." *See, e.g., Techtronic*, 395 F. Supp. 2d at 737.

## VI.    CONCLUSION

For the foregoing reasons, Bosch respectfully requests the entry of an order enjoining Old World from the manufacture, use, offer for sale, sale, or importation into the United States its Accused Products until final resolution of this case.


WILLIAM P. OBERHARDT, LLC

By:    */s/ William P. Oberhardt*

OF COUNSEL:

Michael J. Lennon
Mark A. Hannemann
Jeffrey S. Ginsberg
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel:  (212) 425-7200

William P. Oberhardt
70 West Madison, Suite 2100
Chicago, IL 60602
Tel: 312-251-1100
Fax: 312-251-1175
Atty. Reg. No. 3122407

*Attorneys for Plaintiff Robert Bosch LLC*

Dated:  July 14, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of July, 2010, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ William P. Oberhardt
William P. Oberhardt
WILLIAM P. OBERHARDT, LLC
70 West Madison, Suite 2100
Chicago, Illinois  60602
Tel:  312-251-1100
Fax:  312-251-1175
Atty. Reg. No. 3122407

OF COUNSEL:

Michael J. Lennon
Mark A. Hannemann
Jeffrey S. Ginsberg
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel: 212-425-7200                    *Attorneys for Plaintiff Robert Bosch LLC*